**YOUNIS BROTHERS & CO., INC.**

v.

**CIGNA WORLDWIDE INS. CO.**

**The Abi Jaoudi and Azar Trading Corp.,**

v.

**Cigna Worldwide Ins. Co.**

**Nos. CIV.A. 91–6784, CIV.A. 91–6785.**

United States District Court,
E.D. Pennsylvania.

April 3, 2001.

John J. Seehousen, Langhorne, PA, for plaintiff.

Douglas R. Widin, Stephen A. Cozen, David R. Strawbridge, Cozen & O'Connor, Philadelphia, PA, Louis B. Kimmelman, O'Melveny & Myers, New York, NY, for defendant.

### MEMORANDUM

O'NEILL, District Judge.

Presently before me is defendant's motion for an anti-suit injunction to enforce the final judgment entered in its favor on September 15, 1995. For the reasons stated below, the motion will be GRANTED.

### BACKGROUND

In 1991, plaintiffs filed separate complaints against defendant CIGNA seeking damages for the alleged breach of fire and other property insurance policies for losses suffered in Liberia in 1990 during the Liberian civil war. The case was tried to a jury in February through April of 1994. The jury returned a verdict for plaintiffs. After consideration of post-trial motions, I granted judgment n.o.v. against plaintiffs and in favor of defendant CIGNA on all counts. *See Younis Bros. & Co., Inc. v. CIGNA Worldwide Ins. Co.*, 899 F.Supp. 1385 (E.D.Pa.1995). That decision was affirmed by the Court of Appeals. *See Younis Bros. & Co., Inc. v. CIGNA Worldwide Ins. Co.*, 91 F.3d 13 (3d Cir.1996). The Supreme Court subsequently denied certiorari. *See Younis Bros. & Co., Inc. v. CIGNA Worldwide Ins. Co.*, 519 U.S. 1077, 117 S.Ct. 737, 136 L.Ed.2d 677 (1997).

In May 1998, two lawsuits were filed by the plaintiffs in this case against CIGNA in the Civil Law Court for the Sixth Judicial Circuit, Montserrado County, Liberia. *See* Jallah Affidavit ¶ 8. In response to both suits, CIGNA filed motions to dismiss and motions for summary judgment arguing, *inter alia*, that *res judicata* attached to this Court's final judgment thereby barring any further proceedings in Liberia. *Id.* ¶¶ 13–16 and 33–36. In both cases, the Liberian court denied the motions. *Id.* at Exhibits F, G, Q, and R. In both cases, the Liberian court acknowledged that plaintiffs were attempting to re-litigate the issues decided in this Court. The Liberian court found, however, that Liberian law had "expressly abolished" judgment n.o.v., and on this basis it refused to recognize this Court's final judgment. *Id.* at Exhibit G (at 4–5) and Exhibit R (at 5). One of

the cases has since proceeded to trial, and the jury awarded plaintiff approximately $65 million in damages. *Id.* ¶ 26. The other case is currently awaiting trial. *Id.* ¶ 44.

CIGNA filed this motion for an anti-suit injunction on March 6, 2001. Plaintiffs and their counsel were personally served with copies of the motion and supporting documents on March 6th and 7th. *See* Bullock Affidavit ¶¶ 3, 4, and 5. Despite being afforded an extended period to respond, plaintiffs have made no response to defendant's motion.[1]

## DISCUSSION

"Under general principles of international law, a tribunal may prescribe laws with respect to conduct outside of its territory that has or is intended to have substantial effect within its territory." *Republic of the Philippines v. Westinghouse Elec. Corp.,* 43 F.3d 65, 75 (3d Cir.1994), *quoting Restatement (Third) of the Foreign Relations Law of the United States* § 402(c) (1987). "And where a court may prescribe, it may also enforce." *Id., citing Restatement* § 431(1) ("A state may employ judicial or nonjudicial measures to induce or compel compliance or punish non-compliance with its laws or regulations, provided it has jurisdiction to prescribe in accordance with [§ 402].").

■ Pursuant to this enforcement power, numerous courts have recognized a district court's power to issue an anti-suit injunction that enjoins litigants over which it has *in personam* jurisdiction from pursuing duplicative litigation in a foreign forum. *See, e.g., Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 926 (D.C.Cir.1984) ("It is well settled that English and American courts have power to control the conduct of persons

subject to their jurisdiction to the extent of forbidding them from suing in foreign jurisdictions."); *China Trade and Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 35 (2d Cir.1987) ("The power of federal courts to enjoin foreign suits by persons subject to their jurisdiction is well-established."); *Kaepa, Inc. v. Achilles Corp.,* 76 F.3d 624, 626 (5th Cir.1996) ("It is well settled among the circuit courts—including this one—which have reviewed the grant of an antisuit injunction that federal courts have the power to enjoin persons subject to their jurisdiction from prosecuting foreign suits."); *Gau Shan Co., Ltd. v. Bankers Trust Co.,* 956 F.2d 1349, 1352 (6th Cir. 1992) ("It is well settled that American courts have the power to control the conduct of persons subject to their jurisdiction to the extent of forbidding them from suing in foreign jurisdictions."); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 10 F.3d 425, 431 (7th Cir.1993) ("Courts of equity have long issued injunctions against the use of litigation, including litigation in foreign courts, not to obtain a decision on the merits but to harass a party."); *Seattle Totems Hockey Club, Inc. v. National Hockey League,* 652 F.2d 852, 855 (9th Cir.1981) ("A federal district court with jurisdiction over the parties has the power to enjoin them from proceeding with an action in the courts of a foreign country, although the power should be used sparingly.").

■ The state of the law of anti-suit injunctions in this Circuit was recently summarized by Judge McLaughlin of the Western District of Pennsylvania in *General. Elec. Co. v. Deutz AG,* 129 F.Supp.2d 776 (W.D.Pa.2000), and I am in agreement with his analysis. He found that three Circuit Courts of Appeal follow a "liberal

---

1. In his written response to an inquiry from my Courtroom Deputy, John J. Seehousen, Esq., who represented plaintiffs in the previ- ous proceedings before me, states that he has not been retained to represent plaintiffs with respect to the pending motion.

approach" to anti-suit injunctions that "place[s] less importance on international comity and hold[s] that a court may enjoin a foreign proceeding if that parallel proceeding is vexatious and duplicative." [2] *Id.* At 783. Three other Circuits follow a "restrictive approach" that "place[s] a premium on international comity." [3] *Id.* Under that approach, "a court should only issue a foreign anti-suit injunction when the foreign proceeding (1) threatens its own jurisdiction over the matter at issue or (2) threatens strong public policies of the United States." *Id.*

Judge McLaughlin then found that although the Court of Appeals for the Third Circuit has not expressly adopted either approach it appears to have implicitly adopted the restrictive approach in *Compagnie des Bauxites de Guinea v. Ins. Co. of North Am.*, 651 F.2d 877, 887 (3d Cir. 1981):

> We do not determine that the district court lacks the power to enjoin parties from pursuing an action in another jurisdiction in every case. It is sufficient here to hold that the district court abused its discretion when it enjoined an action seeking a declaratory judgment in the courts of another sovereign. In the present case, duplication of issues and the insurers' delay in filing the London action were the sole bases for the district court's injunction, and we hold that these factors alone did not justify the breach of comity among the courts of separate sovereignties.

Further support for Judge McLaughlin's conclusion can be found in *Westinghouse,* 43 F.3d at 77–78, a case that is not discussed in his opinion. In *Westinghouse,* the Court of Appeals rejected a district court's injunction against the Republic of

the Philippines that enjoined the Republic from taking any legal action against witnesses who were going to testify in proceedings before the district court. The *Westinghouse* Court described the test of *Compagnie des Bauxites* as follows:

> Thus, what we recognized in *Compagnie des Bauxites* ... is that the exercise of a power to prescribe and enforce requires a balancing in each case. The domestic court's purpose in protecting a particular interest must be set against the interests of any other sovereign that might exercise authority over the same conduct.

*Id.*

 Although the *Westinghouse* Court did not specifically mention the factors that Judge McLaughlin identified as constituting the "restrictive approach," those factors are consistent with the "balancing" of which the Court spoke. I therefore find that an injunction is appropriate in this case because: 1) the Liberian litigation is vexatious and duplicative; 2) the Liberian litigation threatens this Court's jurisdiction; 3) the Liberian litigation threatens this nation's strong public policy in favor of *res judicata* and the finality of judgments; and 4) CIGNA has demonstrated that it is entitled to an injunction under the traditional elements for injunctive relief.

First, CIGNA has argued to the Liberian courts and to me that the Liberian litigation is wholly duplicative of the earlier litigation in this Court, and plaintiffs have made no attempt to dispute that fact in either court. Moreover, based upon my independent review of the complaints and other court documents, I agree that the Liberian litigation is duplicative and vexatious.

---

**2.** This approach is followed by the Fifth, Seventh, and Ninth Circuits. *See Kaepa,* 76 F.3d at 626; *Allendale,* 10 F.3d at 431–32; *Seattle Totems,* 652 F.2d at 856.

**3.** This approach is followed the D.C., Second, and Sixth Circuits. *See Laker Airways,* 731 F.2d at 937; *China Trade,* 837 F.2d at 36; *Gau Shan,* 956 F.2d at 1349.

Second, this is not a case where this Court and the Liberian courts concurrently exercised jurisdiction over the underlying dispute. Rather, plaintiffs chose to invoke the jurisdiction of this Court and litigated the matter before me, before the Court of Appeals, and before the United States Supreme Court. Only after plaintiffs were unsuccessful in all of those proceedings did they chose to invoke the jurisdiction of the Liberian courts. The Liberian courts' refusal to recognize the legitimacy of this Court's final judgment therefore implicitly threatens this Court's jurisdiction. *Cf. Laker Airways*, 731 F.2d at 928 ("When the injunction is requested after a previous judgment on the merits, there is little interference with the rule favoring parallel proceedings in matters subject to concurrent jurisdiction. Thus, a court may freely protect the integrity of its judgments by preventing their evasion through vexatious or oppressive relitigation.").

Third, plaintiffs are obviously unhappy with the results of their litigation in this country and are attempting to get a "second opinion" from the Liberian courts. *See General Elec.*, 129 F.Supp.2d at 787. However, this attempt ignores our nation's strong public policy in favor of *res judicata* and the finality of judgments. The Supreme Court "has long recognized that public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled between the parties ... [T]he doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct.

2424, 69 L.Ed.2d 103 (1981) (internal quotations and citations omitted).

Finally, CIGNA has demonstrated that it is entitled to an injunction under the traditional elements for injunctive relief. *See Am. Civil Liberties Union v. Reno*, 217 F.3d 162, 172 (3d Cir.2000). CIGNA has already succeeded on the merits, and it will be irreparably harmed if it is forced to continue to defend against plaintiffs' vexatious and duplicative Liberian litigation and/or defend against execution upon a judgment that conflicts with the final judgment in this case. In addition, the injunction will cause no legal harm to plaintiffs since it has already been determined that they are not entitled to recover against CIGNA, and because of the strong public policy in favor of *res judicata* injunctive relief is in the public interests.

An appropriate Order follows.

### *ORDER*

AND NOW, this Day of April, 2001, after consideration of defendant CIGNA Worldwide Insurance Company's motion for an anti-suit injunction, and for the reasons contained in the accompanying Memorandum, it is ORDERED that the motion is GRANTED. Plaintiffs The Abi Jaoudi and Azar Trading Corp. and Younis Brothers & Co., Inc. are prohibited and enjoined from initiating, maintaining, continuing or taking any actions that conflict with, constitute an attack upon, or seek to nullify this Court's final order dated September 15, 1995, and the judgment entered pursuant thereto. Additionally, plaintiff The Abi Jaoudi and Azar Trading Corp. is prohibited and enjoined from taking any action to enforce in any jurisdiction the Liberian judgment against defendant CIGNA dated October 4, 2000.