### In the Matter of an Arbitration Between

### KARAHA BODAS COMPANY, L.L.C., Petitioner,

v.

### PERUSAHAAN PERTAMBANGAN MINYAK DAN GAS BUMI NEGARA, Respondent.

### No. CIV.A.H 01–0634.

United States District Court,
S.D. Texas,
Houston Division.

April 26, 2002.

E. Thomas Bayko, Jones Day, Houston, TX, Kenneth S. Marks, Susman Godfrey LLP, Houston, TX, Christopher F. Dugan, Paul Hastings, Washington, DC, for Karaha Bodas Co., LLC.

Michael Lamar Brem, Baker Botts LLP, Houston, TX, Matthew D. Slater, Cleary Gottlieb, Washington, DC, F. Walter Conrad, Jr., Baker Botts, Houston, TX, Jonathan D. Schiller, William A. Isaacson, Boies & Schiller, Washington, DC, for Perusahaan Pertambangan Minyak Dan Gas Bumi Negara.

Eric Scott Lipper, Jirsch & Westheimer, Houston, TX, for Bank of America.

Patrick Carlton Appel, Adams & Reese LLP, Houston, TX, Douglas G. Boven, Crosby Heafey, San Francisco, CA, for American Overseas Petroleum, Ltd., PT Caltex Pacific Indonesia.

Jesse Ricker Pierce, Clements O'Neill, Houston, TX, Eric Grannon, Carolyn B. Lamm, Frank Panopoulos, White & Case, LLP, Washington, DC, for Ministry of Finance of Republic of Indonesia.

Roxanne Armstrong, Apache Corp., Houston, TX, for Apache Corp.

Carleton A. Davis, Hilgers & Watkins, Austin, TX, for OpicOil Houston, Inc.

### ORDER GRANTING PRELIMINARY INJUNCTION

ATLAS, District Judge.

This case, in which a final judgment confirming an arbitral award in favor of Karaha Bodas Company, L.L.C. ("KBC") against Perusahaan Pertambangan Minyak Dan Gas Bumi Negara ("Pertamina") was entered on December 4, 2001, is before the Court on KBC's Motion for Preliminary Injunction.[1] The Motion has been briefed and is ripe for determination.[2] Both parties represented to the Court that no evidentiary hearing on KBC's Motion for Preliminary Injunction was necessary. Having considered the parties' submissions, argument of counsel at hearings on March 29, 2002 and April 2, 2002, all matters of record, and applicable legal author-

---

1. The Court issued a Temporary Restraining Order orally on the record at a hearing on March 29, 2002 and issued a Temporary Restraining order and Order of Contempt orally on the record at a hearing April 2, 2002. The Court's oral orders were memorialized in a Temporary Restraining Order and Order of Contempt issued April 9, 2002 [Doc. # 129], as extended by Order issued April 17, 2002 [Doc. # 132].

2. KBC filed an Application for Temporary Restraining Order [Doc. # 88] and Memorandum in Support of Application for Temporary Restraining Order ("KBC's Memorandum of Law") [Doc. # 90], followed by its Memoran-

dum in Support of its Motion for Preliminary Injunction [Doc. # 111] and KBC's Reply Memorandum in Support of its Motion for a Preliminary Injunction [Doc. # 128]. Pertamina filed Pertamina's Memorandum of Law in Opposition to Petitioner's Motion for a Restraining Order and in Support of its Right to Seek Annulment of the Arbitral Award in Indonesia ("Pertamina's Memorandum in Opposition") [Doc. # 115] and Pertamina's Reply Memorandum of Law in Opposition to Petitioner's Motion for a Restraining Order and in Support of its Right to Seek Annulment of the Arbitral Award in Indonesia [Doc. # 127].

ities, the Court concludes that KBC's Motion for Preliminary Injunction should be granted.

## I. *PROCEDURAL BACKGROUND*

An international arbitral tribunal made an award of over $261,000,000, plus interest, in damages in favor of KBC against Pertamina in Geneva, Switzerland, on December 18, 2000 (the "Arbitral Award"). The arbitration arose from a commercial dispute over the construction and operation of a power plant in West Java, Indonesia. Pertamina acknowledges that all post-arbitration proceedings are governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). As contemplated by the New York Convention, Pertamina appealed the Arbitral Award to the Swiss Supreme Court. The Swiss court declined to hear Pertamina's appeal due to a procedural error in paying the appeal costs. In August 2001, the Swiss court rejected Pertamina's request for reconsideration and the Swiss Court's dismissal of the appeal became final.

Meanwhile, in February 2001, KBC filed this case seeking confirmation of the Arbitral Award pursuant to Article V of the New York Convention. This Court entered a final judgment (the "Judgment") confirming the Arbitral Award on December 4, 2001. Pertamina appealed the Judgment to the Fifth Circuit, but has not filed a supersedeas bond or otherwise acted to stay the Judgment's execution. The appeal is still pending.

KBC actively is pursuing execution on the Judgment by registering it in other states and seeking writs of execution, garnishment, and turnover of assets KBC believes are owned by Pertamina. These proceedings are being conducted according to the local laws and practices of the states in which the assets are located. KBC also is seeking enforcement in Canada, Hong Kong, and Singapore of the Arbitral Award in original proceedings commenced under Article V of the New York Convention.

In March 2002, about fifteen months after entry of this Court's Judgment enforcing the Arbitral Award and seven months after the Swiss Supreme Court dismissed Pertamina's appeal, Pertamina filed suit in the District Court of Central Jakarta, Indonesia, seeking an injunction and penalties against KBC to prevent it from enforcing the Arbitral Award and seeking to annul the Arbitral Award (the "Indonesian Action").

KBC filed an emergency request in this Court for a temporary restraining order to prevent Pertamina's Indonesian Action from proceeding and to prevent entry of an injunction against it at a hearing scheduled for April 1, 2002 in Indonesia. The Court held a hearing on March 29, 2002, at which both parties argued their respective positions at length. This Court issued a limited temporary restraining order directing Pertamina to withdraw its request for injunctive relief against KBC at or prior to the hearing scheduled for April 1, 2002, in the Indonesian Action. This temporary restraining order was issued in order to preserve the integrity of the Court's Judgment, which had become final and was on appeal without bond, and to maintain the parties' positions prior to Pertamina's commencement of the Indonesian Action. The Court needed additional time to determine the merits of Pertamina's position that it had the right to proceed with its annulment action. So as not to prejudice Pertamina's rights, the Court did not grant KBC's request to order Pertamina to dismiss the Indonesian Action. Also, to protect Pertamina's interests in being able to defend against proceedings initiated by KBC to enforce the Arbitral Award or to

execute on the Judgment, KBC was ordered not to seek *ex parte* or emergency relief from any court. The Court made it clear that the parties were permitted to make any and all arguments they saw fit in enforcement or execution proceedings on notice to the opponent. The temporary restraining order was narrowly tailored to protect the *status quo* that existed prior to Pertamina seeking entry of the Indonesian Injunction without interfering with the jurisdiction of other courts. By its terms, the temporary restraining order was to last only until a ruling could be made on the pending motion for a preliminary injunction after full briefing.

Despite receiving actual notice of this Court's March 29 Order, Pertamina did not withdraw its injunction request in the Indonesian Action. The Indonesian court on April 1, 2002, issued an injunction with draconian enforcement penalties against KBC (the "Indonesian Injunction").[3] KBC complained, and at a hearing on April 2, 2002, this Court found Pertamina in contempt of the March 29, 2002 restraining order, again ordered Pertamina to withdraw its request in Indonesia for injunctive relief against KBC, and ordered Pertamina to indemnify KBC for any penalties imposed pursuant to the Indonesian Injunction for conduct by KBC that takes place while KBC's Motion for Preliminary

Injunction is pending. As the Court explained on April 2 and in its written injunction, Pertamina's pursuit in Indonesian courts of a broad injunction, and "enforcement penalties" for violation of that injunction, impinges on this Court's Judgment and upon KBC's legitimate efforts to enforce its rights thereunder.

Pertamina has sent a transcript of the hearings in this Court to the Indonesian court and has sent a letter notifying the Indonesian court that this Court has ordered Pertamina to file an application for the withdrawal of the Indonesian Injunction.[4] To date Pertamina has not filed a formal application withdrawing its injunction request nor made any commitment to the Indonesian court not to enforce the Injunction. Pertamina has committed through a letter from its President Director and C.E.O. that it will not seek to enforce the Indonesian Injunction against KBC for KBC's actions within the United States.

## II. *KBC'S MOTION FOR PRELIMINARY INJUNCTION*

KBC's Motion for Preliminary Injunction has two parts. First, it seeks an injunction prohibiting Pertamina from seeking (a) to enjoin KBC's attempts to execute on this Court's December 4, 2001

---

**3.** The Indonesian Injunction prohibits KBC from taking any action to enforce:

[t]he arbitral award rendered in Geneva, Switzerland, on 18 December 2000(P–1), arising from Joint Operating Contract/JOC; and Energy Sales Contract/ESC, upon the condition that KBC is imposed with the obligation to pay enforcement money in the amount of US$500,000.00 for each day this order is contravened, which amount must be paid promptly and fully to the Pertamina.

Exhibit 3 to Petitioner Karaha Bodas Company, L.L.C.'s Motion for Contempt.

**4.** Pertamina has filed a Motion to Purge Contempt and to Alter or Amend the Adjudication

holding Pertamina in Contempt [Doc. # 131]. Pertamina contends that its letter to the Indonesian court satisfies the Court's Temporary Restraining Order. Pertamina further contends that it should be purged of contempt because the oral TRO issued March 29, 2002, on which the contempt was based, was defective and, given the time difference involved, compliance was impossible. Pertamina's Motion to Purge Contempt is denied. However, the Court notes that the April 9, 2002 Temporary Restraining Order and Order of Contempt is superseded by this Preliminary Injunction Order.

Judgment and (b) to take steps to enforce the December 18, 2000 Arbitral Award in the United States or in other jurisdictions. Second, KBC seeks an anti-suit injunction prohibiting Pertamina from pursuing its annulment action in Indonesia altogether.

Pertamina contends that this Court cannot enjoin the Indonesian action because Indonesia is the only court with jurisdiction to consider Pertamina's claim for annulment of the Arbitral Award.

■ Traditionally, a plaintiff seeking a preliminary injunction must show the following four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that it will suffer irreparable injury absent the injunction; (3) that the threatened injury outweighs any harm the injunction might cause the defendants; and (4) that the injunction will not impair the public interest. *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir.2000) (citing *Sugar Busters, L.L.C. v. Brennan*, 177 F.3d 258, 265 (5th Cir.1999)). In addition, it is well-established in the Fifth Circuit that federal courts have the power to enjoin foreign suits by persons subject to their jurisdiction. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir.1996); *see also Bethell v. Peace*, 441 F.2d 495, 498 (5th Cir. 1971); *accord Laker Airways Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909, 926 (D.C.Cir.1984). There is no dispute that this Court has jurisdiction over Pertamina.

In setting the standard for issuance of an anti-suit injunction, the Fifth Circuit has emphasized the need to prevent vexatious or oppressive litigation, and has concluded that "a district court does not abuse its discretion by issuing an anti-suit injunction when it has determined that allowing simultaneous prosecution or the same action in a foreign forum thousands of miles away would result in 'inequitable hardship'

and 'tend to frustrate and delay the speedy and efficient determination of the cause.'" *Kaepa*, 76 F.3d at 627. The Fifth Circuit has declined "to require a district court to genuflect before a vague and omnipotent notion of comity every time that it must decide whether to enjoin a foreign action." *Id.*

In this case, there is a Judgment issued by this Court after extensive and detailed litigation. The Judgment has long been final in the District Court and has been appealed by Pertamina to the Fifth Circuit. The Judgment enforces the Arbitral Award. Until two weeks ago, after this Court issued its temporary restraining order, Pertamina did not seek a stay of the Judgment. Pertamina has never filed, nor offered to file, any bond to prevent KBC's execution or enforcement efforts. KBC contends this Court's Judgment and KBC's ability to seek enforcement of it are threatened by Pertamina's new Indonesian proceeding. After a judgment on the merits, there is less need for concern about interfering with a foreign court's jurisdiction and "a court may freely protect the integrity of judgments by preventing their evasion through vexatious or oppressive relitigation." *Laker Airways*, 731 F.2d at 928.

■ To the extent that it is necessary for KBC to meet the traditional requirements for a preliminary injunction in addition to meeting the standard articulated in *Kaepa*, the Court finds KBC has done so with respect to both aspects of its preliminary injunction request. First, KBC has shown a substantial likelihood of success on the merits. As explained further below, the Indonesian court is not the proper forum for Pertamina's annulment action. Pertamina raises the same issues in Indonesia that this Court has already ruled upon in KBC's favor. Second, absent a preliminary injunction, KBC will suffer ir-

reparable harm; KBC will be forced to relitigate in a foreign forum issues it has already fully litigated and won in this Court. Further, KBC is justified in assuming that forum will be biased against it, rendering the current Judgment meaningless. Third, the balance of harm weighs in favor of granting a preliminary injunction. The Indonesian Injunction and Indonesian Action pose draconian penalties threatening KBC's ability to collect on the Judgment of this Court both in the United States and abroad. Indeed, at Pertamina's request the Injunction was issued without any meaningful due process afforded to KBC. On the other hand, Pertamina is permitted to assert any and all arguments in its favor in courts where KBC seeks to enforce or execute on assets on the basis of this Court's judgment.

■ Although the Court has been careful not to undermine international comity, the Court is not required to give absolute deference to proceedings in a foreign court filed without viable legal authority, especially when a final judgment on the matter has already been entered. In this case, a preliminary injunction of this Court does not impinge on another court's jurisdiction or cause comity concerns. It is the late-filed Indonesian Action that potentially interferes with this Court's jurisdiction, not vice versa. Moreover, as explained hereafter, the Indonesian court does not have jurisdiction under the New York Convention over Pertamina's claims. Thus, the preliminary injunction KBC seeks is consistent with the standards expressed by the Fifth Circuit in *Kaepa* and is not contrary to public policy.

These elements and the ways in which the Indonesian Injunction and the Indonesian Action threaten this Court's jurisdiction and KBC's rights are discussed in detail below.

### 1. The Indonesian Injunction

KBC argues that the injunction sought and obtained by Pertamina in Indonesia is an attack on this Court's jurisdiction and interferes with this Court's inherent authority to enforce its judgments. KBC contends that this effect flows both from the fact that the Indonesian Injunction prevents KBC from seeking enforcement of the Judgment enforcing the Arbitral Award in the United States, and because it prevents KBC from seeking enforcement of the Arbitral Award in other countries under the New York Convention and through other local means.

Pertamina's briefs do not address the injunction aspect of its Indonesian Action except with the following oblique statement: "The only aspect of the Indonesian annulment proceeding that even raised this prospect [of interference] was to the extent [Pertamina] sought an injunction against enforcement of the [arbitral] Award that might apply in the United States, which this Court's March 29 order and now Pertamina's commitment not to pursue or enforce such relief." Pertamina's Memorandum in Opposition, at 13. The Court interprets this statement as Pertamina's continued commitment to this Court that Pertamina will not take steps to enforce the Indonesia Injunction against KBC as to actions KBC might undertake in the United States. It is unclear what Pertamina's position is as to the Indonesian Court's *sua sponte* deeming KBC's actions within the United States a violation of its injunction. As to steps KBC might take to enforce the Arbitral Award outside of the United States under the New York Convention or otherwise, the Court construes Pertamina's position to be that the Indonesian Injunction does not interfere with this Court's jurisdiction, that this Court's restraining order is invalid or ineffective outside the United States, and that

Pertamina is not in contempt for any violation of that order.

The Court at the March 29 (and April 2) hearing raised the issue of whether *res judicata* bars Pertamina's Indonesian Action and whether the Indonesian Action is simply an end-run around the Judgment and appeal here. Pertamina has declined this Court's invitation to submit briefing on the *res judicata* effect of this Court's Judgment in foreign jurisdictions where KBC seeks enforcement. KBC has presented affidavits supporting its contention that the courts and laws of Canada, Hong Kong, and Singapore would apply *res judicata* or analogous principles to give effect to this Court's Judgment is making their own enforcement determinations.[5] Pertamina has submitted nothing to contradict KBC's evidence as to the extraterritorial effect of this Court's Final Judgment.

■ Moreover, Pertamina has presented no authority to support the legitimacy of the Indonesian Injunction in light of the completion of the enforcement proceeding here pursuant to Article V of the New York Convention. Pertamina has cited, and the Court has found, no authority under the New York Convention (which Pertamina concedes contains the exclusive procedure for recognition and enforcement of foreign arbitral awards by its signatories, including Indonesia) for a court in which an action to annul an award is pending to enjoin enforcement proceedings or a party's post-judgment enforcement efforts in another jurisdiction. Instead, the New York Convention contemplates that, under appropriate circumstances, a court in which enforcement is sought may stay the enforcement proceeding pending the annulment action.[6]

The Court concludes that unless and until this Court's Judgment is vacated or stayed by the Court of Appeals for the Fifth Circuit, KBC has every right to rely on this Court's Judgment in its enforcement actions in other countries. The Indonesian Injunction against enforcement of the Arbitral Award is a patent attempt to interfere with the Court's Judgment against and deprives KBC of enjoyment of the Judgment's purpose and effect under United States law and the New York Convention. Therefore, The Court concludes that KBC's request for a preliminary injunction restraining Pertamina from enforcing the Indonesian Injunction has merit and will be granted. The Court also concludes that the indemnification provision of the temporary restraining order is fully justified and necessary. The indemnification provisions will be included in a preliminary injunction, until and unless Pertamina withdraws its request for an injunction and the present injunction is vacated by the Indonesian court.

---

5. *See* Declaration of Douglas Alexander Bodner, Exhibit 1 to KBC's Memorandum of Law (Canada); Declaration of Russell Coleman, Exhibit 2 to KBC's Memorandum of Law (Hong Kong); Declaration of Nandakumar Ponniya, Exhibit 3 to KBC's Memorandum of Law (Singapore).

6. Article VI of the New York Convention provides: "If an application for the setting aside or suspension of the award has been made to a competent authority referred to in Article V(1)(e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision of the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security." (Emphasis added.) In connection with its response to KBC's pending application for turnover, Pertamina filed a cross-motion to stay enforcement proceedings until the Indonesian court has ruled [Doc. # 101]. Pertamina's cross-motion, filed April 1, 2001, has only recently become ripe and will be addressed in a separate order.

## 2. The Indonesian Action

KBC contends that no proceeding under the New York Convention may be maintained in Indonesia because Indonesia is neither the place of arbitration nor the place in which enforcement is sought. Pertamina argues that the Indonesian court has jurisdiction over its annulment proceeding pursuant to Articles V(1)(e) and VI of the New York Convention, and that this Court, as an enforcing court, cannot enjoin the annulment proceeding. Article V(1)(e) provides that recognition and enforcement of an award "may be refused" if "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, the award was made." Pertamina concedes that the phrase "under the law of which" in Article V(1)(e) refers to the arbitral law under which the award was made, not the substantive law that applied to the merits of the dispute.[7] Because of the distinction under the New York Convention between the proper forum for enforcement of an arbitral award versus the forum for annulment of an arbitral award, Pertamina nevertheless contends that the Indonesian Action in no way interferes with this Court's jurisdiction.

■ Pertamina insists that this Court lacks jurisdiction under the New York Convention to enjoin the Indonesian Action. Pertamina misconstrues the source of this Court's injunction jurisdiction. The Court is not attempting to usurp the annulment jurisdiction that is bestowed upon the "country of origin" under the New York Convention. Instead, the Court's injunction is based on its inherent power to protect its own jurisdiction, as clearly established by Fifth Circuit authority. *Kaepa*, 76 F.3d at 627. The Court has jurisdiction over Pertamina and thus has jurisdiction to enjoin Pertamina's actions in a foreign country to the extent those actions interfere with the jurisdiction of this Court or the effect and scope of its orders. *Id.*

The Court finds that KBC has met its burden to show that an anti-suit injunction is appropriate in this case. Pertamina's assertion that the annulment proceeding is not an attack on this Court's jurisdiction and Judgment is disingenuous. Pertamina has admitted that if it is successful in the Indonesian Action, it intends to invoke Article V(1)(e) in support of a motion to this Court to vacate the Judgment confirming the Arbitral Award.[8] In fact, Pertamina

---

7. *See* Pertamina's Memorandum of Law, at 3 ("Under Indonesian law and as envisaged by the New York Convention, Pertamina is authorized to seek annulment of the Award in Indonesia because the Award is governed by the arbitration law of Indonesia."); Expert Report of Albert Jan van den Berg, Exhibit B to Pertamina's Memorandum of Law, ¶ 7 ("In most cases, the country of origin is the country where the place of arbitration is located and the arbitral award is made. That corresponds to the territorial concept of international arbitration, according to which the place of arbitration determines the applicable arbitration law (which law is to be distinguished from the law applicable to the merits)."); *id.* ¶ 19 ("when parties agree on a governing arbitration law that is different than that of the arbitral locale, the country

whose arbitration law was chosen by the parties to govern the proceedings is the proper jurisdiction for bringing an annulment proceeding."); *see also Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 21 (2d Cir.1997) ("only the state under whose **procedural** law the arbitration was conducted has jurisdiction under Art. V(1)(e) to vacate the award." (Emphasis added)).

8. Pertamina's plan is complicated by the fact that this Court lacks jurisdiction to issue the relief Pertamina seeks, since the Judgment has been final for months and Pertamina has appealed the matter. Pertamina would have to seek relief in the Fifth Circuit. Moreover, this Court would not be obligated to give effect to an Indonesian judgment annulling

clearly seeks to circumvent this Court's rulings by belatedly relitigating the validity of the Arbitral Award in a presumably more sympathetic forum. The Court recognizes that, as an enforcing court, its review of the Arbitral Award was limited to the defenses listed in Article VI of the New York Convention, whereas a court of competent authority with jurisdiction to set aside the Arbitral Award is not so limited. *See Yusuf,* 126 F.3d at 21 (a motion to set aside an international arbitral award is controlled by the domestic law of the rendering state). Nevertheless, in this case, virtually all Pertamina's asserted grounds for annulling the Arbitral Award were litigated fully before this Court. Pertamina states:

> Pertamina's application to annul the award is based *inter alia,* on the following grounds: (1) in rendering the Award, the Tribunal exceeded the power conferred on it by the applicable arbitration agreements by disregarding the parties' express choice of Indonesian law, in violation of both the parties' agreements and the applicable UNCITAL Arbitration Rules; (2) the Tribunal improperly consolidated the two proceedings into a single arbitration, also in violation of both parties' agreements and the applicable UNCITRAL Arbitration Rules; (3) the Tribunal improperly forced Pertamina to share the choice of an arbitrator with the Government of Indonesia and with PLN, in violation of the express procedure laid out by the parties' agreements; and (4) the Award contravenes the public policy of the Republic of Indonesia because it held Pertamina (and PLN) liable for its (their) compliance with Indonesian law. Nei-

ther grounds (1) nor (4) had been rased before this Court in the enforcement proceedings.

Pertamina's Memorandum in Opposition, at 3–4. This argument is belied by the record in the present case. Pertamina expressly argued before this Court that the Arbitral Tribunal failed to consider Indonesian law. *See* Respondent Pertamina's Memorandum in Opposition to KBC's Motion for Summary Judgment [Doc. # 29], at 67 ("Not only is such a result fundamentally unfair and contrary to public policy, but it makes no sense under the contracts or Indonesian law. As a matter of Indonesian law, the Tribunal's determination to award damages is in conflict with its factual determination that the parties were prevented from performing by an action that neither party caused—specifically, Presidential Decree No. 5/1988."); *id.* at 71 ("there is no basis under the contracts or Indonesian law for the award of damages"); *see also* Respondent Pertamina's Sur–Reply Memorandum in Opposition to KBC's Motion for Summary Judgment [Doc. # 42], at 26 ("[KBC] ignores (as did the tribunal) that it [secured contractual benefits from Pertamina] in return for and in the context of the application of Indonesian law. As Pertamina's Indonesian law expert Didi Dermawan established, the clauses in the JOC and ESC did not shift the risk of a Government Related Event to Respondents as KBC seeks to do, as a matter of Indonesian law ... In reaching a different conclusion, the tribunal did not purport to resolve disagreements between experts on the interpretation of Indonesian law.... Nor did the tribunal purport to explain how and

the Arbitral Award. *See In re Chromalloy Aeroservices,* 939 F.Supp. 907, 911–13 (D.D.C. 1996) (refusing to give *res judicata* effect to an Egyptian judgment annulling an otherwise valid arbitration award made in Egypt).

Based on the information currently presented, the Court questions how much weight an Indonesian annulment judgment would be entitled to in a proceeding to vacate the Judgment.

why the JOC or ESC should be construed as modifying Indonesian law. To the contrary, the tribunal did not refer at all to Indonesian law, but instead reasoned from abstract legal propositions that were not founded on Indonesian law.").

In addition, this Court expressly ruled that the Arbitral Tribunal did not find Pertamina liable for its compliance with Indonesian law. Although the issue before this Court arose, in part, in the context of the application of United States' public policy, this finding would be equally applicable to an argument regarding Indonesian public policy. Moreover, Pertamina in effect argued that the award also violated Indonesian public policy in connection with its "abuse of rights" defense. Respondent Pertamina's Memorandum in Opposition to Further, KBC's Motion for Summary Judgment [Doc. # 29], at 57 ("The award violates public policy and should not be enforced because, by awarding $150 million in lost profits where KBC had not yet even begun construction of a power plant, could not have reasonably done so, and would have senselessly contributed to the further impoverishment of Indonesia by doing so, it sanctions an abuse of rights by KBC and against Pertamina and PLN (and ultimately, the people of Indonesia")); *id.* at 64 ("And the economic distress to which Indonesia had fallen in 1997 had no more improved as of the hearing in this case than it had in the *Himpurna* or *Pat-*

*uha* cases, and there continues to be a considerable over-supply of electricity."); *id.* at 64 n. 37 ("As of July 27, 2001, the Dollar–Rupiah exchange rate (1:10050) is still more than four times greater than it was before the Asian financial crisis, thus increasing the prospective prices for KBC's electricity by *four-fold;* clearly this is prohibitive in the dramatically depressed Indonesian economy .... It remains the fact that the natural resources of Indonesia belong to the Government for the benefit of all people; they do not belong to Pertamina. Pertamina's exploitation of those resources is for the benefit of the people of Indonesia, not for its own benefit or for the benefit of any private parties, and payment of the Award would cause a very substantial blow to Indonesia's precarious economic standing."). Presumably, Pertamina intends to argue that the Award violates Indonesian public policy for the same reasons it argued that Award violates United States public policy, namely because it holds Pertamina liable for engaging in conduct that was compelled by Indonesian law, "which governed the parties' relations" and because it is "injurious to the public interest." [9] *Id.* at 67. Thus, Pertamina's efforts to relitigate the same issues actually decided by this Court is an obvious attempt to attack this Court's jurisdiction by relitigating old issues in a more favorable forum.[10]

9. Pertamina's argument that the damages award is contrary to public policy because it would be injurious to the Indonesian economy is at odds with its position that it is an independent company and the Indonesian government is not liable for its debts. The Court is not making a ruling as to the ownership of any assets at this time. If in fact Pertamina has no assets subject to execution, as it has contended in response to KBC's attempts at execution, then the existence of the Arbitral Award itself will not affect Indonesia's assets nor injure the Indonesian economy.

10. Pertamina is much like the vexatious plaintiffs enjoined in *Younis Bros. & Co. v. CIGNA Worldwide Ins. Co.,* 167 F.Supp.2d 743, 747 (E.D.Pa.2001):

[P]laintiffs are obviously unhappy with the results of their litigation [in the United States] and are attempting to get a 'second opinion' from the Liberian courts ... [defendant] has already succeeded on the merits, and it will be irreparably harmed if it is forced to continue to defendant against plaintiffs' vexatious and duplicative Liberian litigation and/or defend against execu-

In this case, Pertamina never raised the possibility of seeking annulment of the Arbitral Award by an Indonesian court during the summary judgment proceedings, despite Pertamina's awareness of the defense to enforcement provided by Article V(1)(e) of the New York Convention. Furthermore, Pertamina has spared no expense in its attack on the Arbitral Award. The company is represented by highly regarded, sophisticated lawyers who have raised every conceivable argument in Pertamina's defense. The Indonesian Action appears to be no more than a last ditch effort to avoid the effect of this Court's Judgment enforcing the Arbitral Award.

 To the extent Pertamina contends that the Indonesian Action is based on grounds not presented to this Court, that position depends on a finding that, pursuant to the parties' agreements, Indonesian arbitral law applied in the arbitration.[11] Pertamina's interpretation of the contracts in this regard is unpersuasive.[12] Under Pertamina's own expert's standards, the parties failed to make it clear in the governing agreements that Indonesian *arbitral* law was to apply. Rather, the parties made it clear to the arbitrators that the arbitration in fact was to be conducted under the arbitral law of Switzerland.[13] The Court combed the arbitration record presented by the parties in connection with the summary judgment motion and the pending motion and has found no indication that Pertamina ever argued for

---

tion upon a judgment that conflicts with the final judgment in this case.

11. There is no dispute that Indonesian law applied to the merits. However, Pertamina does not argue that the choice of substantive law governs the forum for its annulment proceeding under the New York Convention.

12. Pertamina's own expert points out that "if the parties agree on a place of arbitration, it is generally assumed that such agreement implies a choice on the arbitration law of the place of arbitration. However, if the parties have agreed on a place of arbitration and the applicability of the arbitration law of another country (which is exceptional), they have agreed on the place of arbitration in the physical sense as opposed to the one they agreed to in the legal sense." Expert Report of Jan van den Berg, ¶ 9. Jan van den Berg further states "[m]y own view is that the agreement to arbitrate under the law of a country which is not the country in which the award is to be made needs to be clear as it is a rather exceptional agreement." Expert Report of Jan van den Berg, ¶ 20. Yet, Jan van den Berg seems to ignore his own standards when he goes on to opine that the parties' mere reference to certain provisions of the Indonesian Code of Civil Procedure is a sufficiently "clear" expression of the parties' intent to make the "rather exceptional" selection of Indonesian law as the law governing the arbitration and award. *Id.* ¶ 27. This Court places no weight on this expert's ultimate conclusion as to the parties' intent as to the choice of arbitral law.

13. *See, e.g.,* Preliminary Award in an Arbitration Procedure Under the UNCITRAL Arbitration Rules, September 30, 1999, § B(1) ("The Respondents support this conclusion by making reference to Swiss law as the JOC and the ESC provide for UNCITRAL Arbitration in Geneva between the parties which are neither Swiss nor Swiss resident. As a result, and under both contracts, the arbitration proceedings are governed by Chapter 12 of the Swiss Private International Law Statutes. Under Swiss law, [Respondent contends] the Arbitral Tribunal is lacking jurisdiction because KBC failed to comply with the contractual prerequisites to arbitration."); *id.* § C(1) ("The Respondents also state that, under the arbitration agreements and Swiss law, the arbitrators have no power to consolidate ..."); *id.* § C(3) (citing the "famous Westland Case" of the Swiss Federal Tribunal in support of its decision that a consolidated arbitration was appropriate); *id.* § D(1) (Respondents contend "such solution is not acceptable under the applicable Swiss law"). For this reason, it is not necessary to interpret the underlying contracts or to address KBC's argument that Pertamina's Expert Report of Albert Jan van den Berg improperly assumes the role of the Court by interpreting the contracts.

the application of Indonesian arbitral law.[14] Under Pertamina's own theory, the New York Convention vests jurisdiction to set aside an arbitral award only in the "country in which, or under the law of which, that award was made." There can be no doubt that the physical *and* legal situs of the Arbitral Award was Geneva, Switzerland. Since Pertamina never argued in the arbitration that the parties' contracts selected Indonesian arbitral law, and the arbitral panel adopted Swiss arbitral law, Pertamina is bound to its prior positions.[15] *See supra* n. 13 and cites therein.

Pertamina's new posture is further undermined by its previous representations to this Court that the arbitration was conducted pursuant to Swiss arbitral law.[16] Pertamina's comments in its motion for a stay of the instant case pending resolution of Pertamina's Swiss appeal, filed May 19, 2001, are telling. Pertamina argued not only that the Swiss Supreme Court had jurisdiction to hear its appeal (without eliminating the possibility that an Indonesian court might share such jurisdiction), but also urged specifically, repeatedly and unequivocally that Swiss arbitration law applied in the arbitration. Pertamina opened its Motion by stating: "The arbitration award ... was conducted subject to the arbitration laws of Switzerland, and the Swiss court is empowered to vacate an award rendered in Switzerland.... KBC is asking this Court to act prematurely to confirm an award that might be overturned in the country whose law governed the arbitration."[17] Pertamina added that "it is fundamental that the courts of the originating nation are in the best position to pass on issues under their own law.... Here, Pertamina's appeal encompasses questions of Swiss law." *Id.* at 6; *see also* Respondent Pertamina's Memorandum in Opposition to KBC's Motion to Summary Judgment [Doc. # 29], at 34–35 ("By adopting an arbitral procedure that resulted in such a disparate outcome, the tribunal thus exceeded its authority and failed to accord the parties equal treatment in direct contravention of the procedural law governing this arbitration. *See* RLA 1, Swiss Private International Law Statute ('PIL'), Article 182(3) ('the arbitral tribu-

---

**14.** In fact, as the Court pointed out in its December 2001 Memorandum and Order affirming the Arbitral Award, Pertamina's counsel expressly represented to the tribunal at the close of evidence that Pertamina had no objections (beyond those already lodged) to the arbitration proceeding. Hearing Transcript, Vol. V, at 814.

**15.** An arbitration decision can have collateral estoppel or *res judicata* effect between the same parties in a subsequent proceeding. *Universal American Barge Corp. v. J–Chem, Inc.,* 946 F.2d 1131, 1137 (5th Cir.1991); RESTATEMENT (SECOND) JUDGMENTS § 84 (1980).

**16.** Although the Court denied Pertamina's motion to stay the enforcement proceeding pending a decision from the Swiss court, the Court did slow the proceedings in this case in deference to Pertamina's request. The Court finds that this is an appropriate case for application of judicial estoppel. There are no in-flexible prerequisites nor is there a definitive formula for determining the applicability of judicial estoppel. *New Hampshire v. Maine,* 532 U.S. 742, 751, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); *see also United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir.1993) ("the policies underlying the doctrine [of judicial estoppel] include preventing internal inconsistency, precluding litigants from 'playing fast and loose' with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment."). This Court was led to believe that the Swiss court had exclusive jurisdiction to annul the Arbitral Award and it relied on that representation in proceeding to final judgment in this enforcement proceeding only after the Swiss appeal was dismissed and that dismissal became final.

**17.** *See* Respondent Pertamina's Motion for Stay Pending Resolution of Swiss Appeal and Memorandum in Support [Doc. # 13], at 1.

nal shall ensure equal treatment of the parties and the right of the parties to be heard in an adversarial procedure'); UNCITRAL Arbitration Rules, LA–6, Article 15 (requiring that parties 'are treated with equality and that at any stage of the proceedings each party is given a full opportunity of presenting its case'). Neither the UNCITRAL Arbitration Rules nor the Swiss Private International Law Statute provide for non-consensual consolidation of arbitration disputes.").[18] Because Swiss arbitral law applied in the arbitration, Pertamina's argument that only the court in Indonesia has jurisdiction to annul the Arbitral Award under the New York Convention, and thus Pertamina's defense to KBC's preliminary injunction, fails entirely.

## III. *CONCLUSION AND ORDER*

Because the injunction entered against KBC in Indonesia and the annulment proceeding pending there threaten both this Court's jurisdiction to enforce its Judgment and KBC's rights, the Court concludes that a preliminary injunction is warranted. It is therefore,

**ORDERED** that KBC's Motion for Preliminary Injunction [Doc. # 88] is **GRANTED**. It is further

**ORDERED** that Pertamina shall not at any time while this Preliminary Injunction is in force seek to enforce the Indonesian Injunction entered in its favor against KBC on April 1, 2002 in District Court in Jakarta, Indonesia. It is further

**ORDERED** that Pertamina shall not at any time while this Preliminary Injunction is in force collect (or take steps to collect) any fine or penalty from KBC as a result of the Indonesian Injunction entered in its favor against KBC on April 1, 2002 in District Court in Central Jakarta, Indonesia. It is further

**ORDERED** that while this Preliminary Injunction is in force, Pertamina shall indemnify KBC for all monetary punishments or penalties imposed under the Indonesian Injunction as a result of any action taken by KBC to enforce the Arbitral Award or to execute on the Judgment. It is further

**ORDERED** that if any order is issued by any court against KBC ordering KBC to pay penalties arising from the Indonesian Injunction, Pertamina shall pay KBC such monies prior to KBC having any obligation to pay Pertamina or the ordering court such amounts. It is further

**ORDERED** that Pertamina shall take no action while this Preliminary Injunction is in force to prosecute the action it filed against KBC in the District Court in Central Jakarta, Indonesia. It is further

**ORDERED** that Pertamina shall inform the District Court in Central Jakarta, Indonesia that it cannot and will not take any action to pursue the action pending there. It is further

**ORDERED** that the Temporary Restraining Order and Order of Contempt issued by this Court April 9, 2002, as extend by Order issued April 17, 2002, is superseded by this Preliminary Injunction, and all restraints not expressly set forth in this Preliminary Injunction are dissolved.

---

18. As a practical matter, Pertamina's current suggestion that both Switzerland and Indonesia have jurisdiction to set aside the award seems particularly at odds with the "well established principal of current international commercial arbitration that the court of the country of origin is **exclusively competent** to decide on the setting aside of the award." ALBERT JANVAN DEN BERG, THE NEW YORK ARBITRATION CONVENTION OF 1958, at 10 (Kluwer Law and Taxation Publishers 1981)(emphasis added).